Filed 8/25/25  P. v. Villasenor CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>MARK ANTHONY VILLASENOR,<br><br>     Defendant and Appellant. | B337667<br><br>(Los Angeles County<br>Super. Ct. No. BA367843) |

APPEAL from an order of the Superior Court of Los Angeles County, Laura F. Priver, Judge.  Conditionally affirmed with directions.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephen D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

An information filed in 2010 charged Mark Anthony Villasenor with one count of murder and alleged he personally and intentionally discharged a firearm, causing the victim's death.  In 2012, he pleaded no contest to voluntary manslaughter and other amended charges in exchange for dismissal of the murder count and an agreed upon sentence of 29 years.  As part of the plea, he admitted he personally used a firearm in the commission of the manslaughter and admitted a gang enhancement allegation.

In 2023, Villasenor filed a form petition for resentencing under Penal Code[1] section 1172.6, a statute which authorizes relief for, among others, persons convicted of manslaughter under since invalidated theories of murder, including the natural and probable consequences doctrine.  After appointing counsel for Villasenor, allowing both sides to file briefing, and holding a hearing to determine if Villasenor made a prima facie showing for relief, the trial court denied the petition without issuing an order to show cause and holding an evidentiary hearing.  The court found that the record of conviction, including a transcript from Villasenor's preliminary hearing, showed he was ineligible for relief as a matter of law because he was the actual killer and he acted alone.

Villasenor appealed from the order, contending his form petition was sufficient to make a prima facie showing for relief and the trial court improperly relied on the preliminary hearing transcript in denying the petition.  Guided by our Supreme Court's decision in *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*)—issued after Villasenor filed his opening appellate

---

[1] Undesignated statutory references are to the Penal Code.

2

brief—we conclude the trial court did not err in finding Villasenor failed to make a prima facie showing for relief in his form petition. Following the approach adopted in *Patton*, and as requested by Villasenor in his appellate reply brief, we remand the matter to the superior court to consider any additional facts should Villasenor, within 30 days of remand, seek to supplement his petition. (*Id.* at pp. 569-570.) We therefore conditionally affirm the order denying the petition.

## BACKGROUND

### A.   Preliminary Hearing

At Villasenor's preliminary hearing, a police officer testified that, in investigating the homicide at issue in this case, he obtained video from a surveillance camera that captured the crime scene at the time of killing. The prosecutor played the surveillance video as the officer testified. The officer identified victim Ronald Barron and appellant Villasenor in the video.

According to the officer's testimony, the video showed that in the evening on February 7, 2010, Villasenor was walking across Pico Boulevard when Barron approached him on foot and a verbal altercation ensued between them. During the altercation, Barron was fatally shot in the chest.[2] The officer also testified that two days after the shooting, Villasenor submitted to a videorecorded interview by a detective, during which he stated he shot Barron because he saw Barron reach for his waistband and believed Barron was armed, although he did not see a weapon. The officer was not present for the interview. At some point prior

---

[2] The prosecutor did not ask the officer to narrate the entire surveillance video as it played, and the officer did not explicitly testify that the video showed Villasenor shoot Barron.

to his preliminary hearing testimony, he watched the video recording of the interview.[3]

After the presentation of evidence, Villasenor asked the court to reduce the charge to manslaughter. The court denied the motion and held Villasenor to answer on a charge of murder, with a firearm enhancement allegation under section 12022.53, subdivision (d) (personal and intentional discharge of a firearm causing death). The court commented, "Based on my viewing of the video, I didn't see the decedent reaching for his waistband, but even there [*sic*] would not have been a reason for the defendant to respond with deadly force at least for this proceeding. . . ."

On July 15, 2010, the district attorney filed an information charging Villasenor with murder and alleging the above-described firearm enhancement.

## B.     No Contest Plea and Admission of Enhancement Allegations

Two years later, on July 13, 2012, Villasenor waived his constitutional rights and pleaded no contest to amended charges of voluntary manslaughter (§ 192, subd. (a)), having a concealed firearm on his person (former § 12025, subd. (a)(2)), vandalism (§ 594, subd. (d)(1)), and active participation in a criminal street gang (§ 186.22, subd. (a)). He admitted an amended allegation that in the commission of the voluntary manslaughter he personally used a firearm, within the meaning of section 12022.5, subdivision (a). He also admitted allegations that he committed

---

[3] The record on appeal does not include the surveillance video or Villasenor's videorecorded interview, and therefore we have not reviewed either.

4

the voluntary manslaughter and the vandalism for the benefit of, at the direction of, and in association with a criminal street gang, with the specific intent to promote, further, and assist in criminal conduct by gang members. (§ 186.22, subds. (b)(1)(A) & (C).) His counsel indicated he joined in the waivers and plea, and he was satisfied there was a factual basis for the plea based on the police report, preliminary hearing transcript, and probation report. The trial court found a factual basis for the plea and accepted the plea and admissions.

Under the terms of the plea negotiation, the trial court dismissed the murder charge and sentenced Villasenor to 29 years in state prison for the other offenses: the middle term of six years for the voluntary manslaughter, plus 10 years for the firearm enhancement and 10 years for the gang enhancement; eight months for the concealed weapon; eight months for the vandalism, plus 12 months for the gang enhancement; and eight months for the gang participation offense.[4]

## C.   Petition for Resentencing

In 2018, the Legislature enacted Senate Bill No. 1437 "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Sen. Bill No. 1437 (2017-2018 Reg. Sess.); Stats. 2018, ch. 1015, § 1(f), p. 6674; §§ 188, subd. (a)(3) &

---

[4] For each offense other than voluntary manslaughter, the term the court imposed was one-third of the middle term.

5

189, subd. (e).) Senate Bill No. 1437 amended sections 188 (defining malice) and 189 (felony murder) and added section 1170.95, now renumbered section 1172.6,[5] which established a procedure for vacating murder convictions and resentencing defendants who could no longer be convicted of murder in light of the amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4, pp. 6675–6677.)[6] On October 5, 2021, the Governor signed into law Senate Bill No. 775 which amended then-section 1170.95 to, among other things, authorize relief for persons convicted of manslaughter when the prosecution was permitted to proceed under a since invalidated felony murder or natural and probable consequences theory of liability. (Sen. Bill No. 775 (2020-2021 Reg. Sess.); Stats. 2021, ch. 551, § 2.)

On August 22, 2023, Villasenor, as a self-represented litigant, filed a petition for resentencing using a pre-printed form. He checked boxes on the form indicating (1) an information was filed against him that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, or other theory under which malice is imputed based solely on participation in a crime; (2) he accepted a plea offer in lieu of a trial at which he could have been convicted of murder; and (3) he could not presently be convicted of murder because of changes made to sections 188 and 189,

_____

[5] Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10).

[6] Senate Bill No. 1437 added the following provision to section 188: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime."

effective January 1, 2019. He also checked the box requesting appointment of counsel.

The trial court appointed counsel for Villasenor and set a briefing schedule. The district attorney filed a brief opposing the resentencing petition, arguing Villasenor was ineligible for resentencing as a matter of law because he was convicted of manslaughter as the actual killer and not under an invalidated felony murder or natural and probable consequences theory. The district attorney set forth a statement of facts, taken from the preliminary hearing transcript attached to the brief, and provided the surveillance video to the court.

In a reply brief filed by his counsel, Villasenor relied on the allegations in his pre-printed form petition to support his contention that he made a prima facie case for relief, and the trial court must issue an order to show cause and set the matter for an evidentiary hearing. He argued the court could not rely on the preliminary hearing transcript or the surveillance video without engaging in fact finding, which was impermissible at the prima facie stage. He did not include in his brief a statement of facts describing the circumstances of the shooting.

On March 22, 2024, the trial court held a hearing under section 1172.6, subdivision (c), to determine whether Villasenor made a prima facie case for relief, and the court took the matter under submission. On April 5, 2024, the court issued an order denying the petition. The court concluded that based on the record of conviction, including portions of the preliminary hearing transcript, Villasenor was ineligible for relief as a matter of law because he was the actual killer and he acted alone.

7

## D.  Briefing on Appeal

Villasenor filed a timely notice of appeal.  In his opening appellate brief, he contended his form petition was sufficient to make a prima facie showing for relief and the trial court improperly relied on the preliminary hearing transcript in denying the petition.  At the time he filed his opening brief, a split of authority existed concerning the extent to which a trial court could rely on a preliminary hearing transcript at the prima facie stage of a section 1172.6 proceeding.  (See *Patton*, *supra*, 17 Cal.5th at p. 560.)

Before the Attorney General filed the respondent's brief, our Supreme Court decided *Patton*, *supra*, 17 Cal.5th 549, in which it held that a court may deny a form section 1172.6 petition at the prima facie stage in a case involving a plea where there are "unchallenged, relief-foreclosing facts within a preliminary hearing transcript." (*Patton*, at p. 564.)  The Attorney General argued that under *Patton*, "the trial court properly relied on the preliminary hearing transcript to deny relief at the prima facie stage."  The Attorney General also argued that based on the record of conviction, including the preliminary hearing transcript, the "trial court properly found [Villasenor] ineligible for relief because he was the actual killer and sole participant and not convicted under any abrogated theory of murder."

In his appellate reply brief, Villasenor did not respond to the Attorney General's arguments or dispute that under *Patton* he failed to make a prima facie showing for relief in his form petition.  Rather, he requested that in accordance with the approach adopted in *Patton* (which we describe below), we remand his case to the superior court to allow him an opportunity

8

to amend his petition to allege facts sufficient to make a prima facie showing for relief.

## DISCUSSION
**A.  Section 1172.6 and the Prima Facie Inquiry**

As stated in section 1172.6, subdivision (a), "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . ." When a defendant files a facially sufficient petition under section 1172.6, subdivision (b), by completely filling out the pre-printed form petition and checking all required boxes, the trial court must appoint counsel to represent the petitioner, allow briefing from both sides, and hold a hearing to determine whether the petitioner has made a prima facie showing for relief. (§ 1172.6, subds. (b)-(c).)  If the petitioner makes such a showing, the court must issue an order to show cause and hold an evidentiary hearing, unless the parties stipulate that the petitioner is entitled to relief.  (§ 1172.6, subds. (c)-(d)(2).)  At the evidentiary hearing, the prosecution has the burden of "prov[ing], beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).)

As the California Supreme Court explained in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*):

"The record of conviction will necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless.  This is consistent with the statute's overall purpose: to ensure that murder culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process.  [Citation.]

"While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause." '  [Citations.]  '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citations.]  'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "  (*Lewis, supra,* 11 Cal.5th at p. 971.)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' "  (*Lewis, supra,* 11 Cal.5th at p. 972.)  The " 'prima

10

facie bar was intentionally and correctly set very low.' " (*Ibid*.) "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under section [1172.6], subdivision (c)." (*Ibid*., fn. omitted.)

In *Patton*, the Supreme Court further explained, "It follows from *Lewis* and these hornbook pleading principles that a section 1172.6 petitioner who, despite having access to counsel upon submission of a facially sufficient petition, offers only conclusory allegations of entitlement to relief, in response to a record of conviction that demonstrates the petitioner's conviction was under a still-valid theory, has not, thereby, made a prima facie showing. Where facts from the record of conviction are undisputed, accepting them over contrary legal allegations that are merely conclusory is not 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Patton*, *supra*, 17 Cal.5th at pp. 565-566, fn. omitted.) Accordingly, at the prima facie stage, a court may "rely on unchallenged, relief-foreclosing facts within a preliminary hearing transcript to refute conclusory, checkbox allegations" in a form section 1172.6 petition. (*Id*. at p. 564.)

"Whether the court conducted a proper inquiry under section [1172.6], subdivision (c)" at the prima facie stage—the issue before us—is a question we review de novo. (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437; *People v. Harden* (2022) 81 Cal.App.5th 45, 52 ["We independently review a trial court's determination on whether a petitioner has made a prima facie showing"].)

11

## B.    Analysis

At the preliminary hearing, the prosecution presented evidence indicating Villasenor fatally shot Barron in the chest during a verbal altercation, a currently valid theory of murder liability.  Villasenor has not suggested a factual scenario under which he could have been prosecuted under an invalid natural and probable consequences or felony murder theory.  Indeed, he has provided no factual context at all for the standard, pre-printed allegations in his form section 1172.6 petition.

Before *Patton* was decided, Villasenor argued in this appeal that a court could not properly consider a preliminary hearing transcript in determining if a petitioner made a prima facie showing for relief in a section 1172.6 petition filed after a plea.  Since *Patton* was decided, Villasenor has abandoned his contention that the allegations in his form petition are sufficient to make a prima facie showing for relief notwithstanding unchallenged facts presented at the preliminary hearing.

The *Patton* Court concluded, as we do here, that appellant Patton failed to make a prima facie showing for relief in his form section 1172.6 petition where "statements within Patton's preliminary hearing transcript contributed specific factual assertions about his conviction — namely, that it was premised on him being the sole shooter.  Patton's conclusory checkbox allegations alone could not create a factual dispute about whether he played a meaningfully different role in the attempted murder." (*Patton, supra*, 17 Cal.5th at p. 569.)  In accord with Patton's request at oral argument, and "out of an abundance of caution," the Supreme Court "order[ed] a remand to the superior court with directions for that court to consider an amended petition should Patton, within 30 days of that remand, seek to file one."

12

(*Id*. at pp. 569-570.)  At Villasenor's request, we make the same order here.

## DISPOSITION

The order denying Villasenor's resentencing petition is conditionally affirmed.  If Villasenor files an amended petition for resentencing within 30 days after remand that pleads additional facts, the trial court shall vacate its order denying the original petition and consider the additional facts in determining whether Villasenor has made a prima facie case for relief under section 1172.6; if Villasenor fails to file an amended petition, the April 5, 2024 order denying the resentencing petition shall be final.

NOT TO BE PUBLISHED

M. KIM, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

13